JL

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Harjot Singh,

                Petitioner,

v.

Unknown Party, et al.,

                Respondents.

No.   CV-26-00483-PHX-JCH (CDB)

**ORDER**

Petitioner filed this action under 28 U.S.C. § 2241 challenging his immigration detention.  (Doc. 1.) The Court ordered Respondents to show cause why the Court should not grant the Petition. (Doc. 5.)  The Court will grant the Petition and order Petitioner released.

**I.      Background**

Petitioner is a native and citizen of India.  (Doc. 1 at 1 ¶ 1.)  Petitioner entered the United States near the Mexican border in Tijuana on December 31, 2023.  (*Id.* at 12 ¶ 35.) On January 1, 2024, Customs and Border Protection ("CBP") officers encountered Petitioner near Tecate, California. (Cabrera Decl., Doc. 6-1 at 2 ¶ 5.)  CBP determined that Petitioner was illegally present in the United States.  (*Id.*)  A January 2, 2024 Notice to Appear ordered petitioner appear before an immigration judge, placed Petitioner into removal proceedings under § 240 of the Immigration and Nationality Act ("INA") (codified at 8 U.S.C. § 1229a), and classified Petitioner as an "alien present in the United States who has not been admitted or paroled." (Doc. 1-1 at 3).  Petitioner was also released

on an Order of Release on Recognizance due to lack of bed space.  (Doc. 6-1 at 2.)

On May 21, 2024, Petitioner filed an Application for Asylum and Withholding of Removal.  (Doc. 1-1 at 5–12.)  In December 2025, Petitioner moved from Indiana to California.  (Doc. 1 at 12 ¶ 37.)  Petitioner did not update his address with ICE "because he had been told by ICE that he only needed to appear for his court hearing and was not under any active supervision requirements."  (*Id.*)

On January 1, 2026, Border Patrol agents encountered Petitioner near Yuma, Arizona and determined he was illegally present in the United States.  (Doc. 6-1 at 2 ¶ 7.)  Petitioner was taken into custody.  (*Id.*)  Petitioner asked for the reason for his arrest, and the officers stated that his hearing date was "too far in the future and that he would have to fight his asylum case while in ICE custody."  (Doc. 1 at 13 ¶ 39.)

On January 8, 2026, ICE officers filed a "Notice to EOIR: Alien Address."  (Doc. 6-1 at 2 ¶ 9.)  On January 21, 2026, Petitioner appeared before an Immigration Judge ("IJ"), who continued Petitioner's case.  (*Id.* ¶ 10.)  Petitioner was scheduled for a hearing on February 5, 2026.  (*Id.* ¶ 11.)  According to the Executive Office of Immigration Review's Automated Case Information, Petitioner is scheduled for an individual hearing on March 25, 2026.[1]

Petitioner filed this action on January 26, 2026, arguing that his re-detention without a pre-deprivation hearing violated his Fifth Amendment right to procedural due process.  (Doc. 1 at 15 ¶ 52.)[2]

. . . .

---

[1] The Petition also states that on December 23, 2025, an IJ concluded he lacked authority to conduct a custody redetermination hearing because Petitioner was allegedly apprehended "while arriving," subjecting him to mandatory detention under INA § 235(b) and making him ineligible for a bond hearing under INA § 236(a), notwithstanding his placement in § 240 proceedings.  (Doc. 1 at 19 ¶ 68.)  A December 23, 2025 custody determination would pre-date Petitioner's January 1, 2026 arrest.  The Court assumes the date of the custody redetermination hearing was inadvertently incorrect, but this mistake is inconsequential for purposes of this Order.

[2] Petitioner also asserts additional violations under the Fifth Amendment, including substantive due process, arbitrary and capricious agency action, equal protection, suspension clause, and the Accardi Doctrine.  Because the Court will grant Petitioner relief on his procedural due process claim, it will not address Petitioner's other claims.

**II.    Discussion**

The Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. And it is well established that the Due Process Clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: (1) is there a protected liberty interest, and (2) if so, what procedures are necessary to ensure deprivation of that protected liberty interest accords with due process. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

**A.    Petitioner has a protected liberty interest in his release.**

If an immigrant, like Petitioner, is inspected near the border soon after arriving in the United States, found to be without proper documentation, is without criminal history, and has not been previously removed from the country, "the immigrant may be placed in expedited removal proceedings or, if the immigrant[] indicates either an intention to apply for asylum . . .[the Department of Homeland Security] can forgo the expedite removal process and place the immigrant in removal proceedings under § 240 of the INA (codified at 8 U.S.C. § 1229a) by issuing the immigrant a [Notice to Appear]." *Cardin Alvarez v. Rivas*, No. CV 25-02943 PHX GMS (CDB), 2025 WL 2898389, at *10 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part sub nom. Alvarez v. Rivas*, No. CV-25-02943-PHX-GMS, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025)

Petitioner's Notice to Appear indicates that agents placed Petitioner in "removal proceedings under [§] 240 of the [INA]," as "an alien present in the United States who has not been admitted or paroled." (Doc. 1-1 at 3.) Agents then released Petitioner on his own recognizance. (Doc. 6-1 at 2 ¶ 6.) "Release on recognizance is not a humanitarian or public benefit parole into the United States under [8 U.S.C. § ]1182(d)(5)(A) but rather a form of conditional parole from detention upon a charge of removability, authorized under [8 U.S.C. § ]1226." *Cardin Alvarez*, 2025 WL 2898389, at *11 (quoting *Martinez v. Hyde*, F. Supp.3d 2025 WL 2084238, at *3 (D. Mass. July 24, 2025)). The two forms of release

are legally distinct. *Id.* Humanitarian parole under § 1182(d)(5)(A) "allows a noncitizen to physically enter the country, subject to a reservation of rights by the government, whereas release on recognizance releases a noncitizen already in the country from domestic detention." *Id.* (citing *Ortega-Cervantes*, 501 F.3d at 1111, 1115–16 (9th Cir. 2007). "This distinction is significant because it reflects different legal statuses and protections for noncitizens." *Id.*

Respondents state that "the action taken by government officials in 2024—Release on Recognizance—was contrary to statute" because "[t]he agent or agents who granted Petitioner Release on Recognizance did not have the statutory authority to do so" and "designated a type of release that was not statutorily available to Petitioner." (Doc. 6 at 2.) Respondents assert that "the incorrect choice of authority for release does not change the character of Petitioner's detention." (*Id.*) They maintain that Petitioner is an "applicant for admission" subject to expedited removal procedures under 8 U.S.C. § 1225(a) because he was detained at the border upon entry. (*Id.* at 4.) Respondents argue that because detention under § 1225(a) is mandatory, "the only method of parole available to Petitioner was and is discretionary humanitarian parole pursuant to 8 U.S.C.A. § 1182(d)(5)." (*Id.* at 2.) Finally, respondents assert that Ninth Circuit precedent establishes there is no protected liberty interest in humanitarian parole under § 1182(d)(5). (*Id.* at 4–5.)

A growing number of cases hold that individuals like Petitioner who were released from immigration detention on an order of recognizance have a liberty interest in that release. *See, e.g.*, *Tinoco v. Noem*, --- F. Supp. 3d ---, 2025 WL 3567862, at *2, *5-7 (E.D. Cal. Dec. 14, 2025) ("Having elected to proceed with full removal proceedings under § 1226, Respondents cannot now reverse course and institute § 1225 expedited removal proceedings."); *Telenchana v. Hermosillo*, 2:26-cv-00363-GJL, 2026 WL 696806, at *9 (W.D. Wash. Mar. 12, 2026) (concluding that re-detention of petitioners who had been released on their own recognizance violated due process under the *Mathews* framework because petitioners had "established liberty interests."); *Singh v. Andrews*, 803 F. Supp. 3d 1035 (E.D. Cal. 2025) ("Petitioner's release from custody in January 2024 and ties to his

- 4 -

community provide him with a protected liberty interest."). Even assuming that Respondents are correct and Petitioner was not entitled to be released on his own recognizance under § 1226(a), this does not change the fact the Petitioner was so released. The government cannot "switch tracks" and subject Petitioner to mandatory detention under § 1225(b)(2) when the government has previously placed Petitioner in removal proceedings under § 1229a and released him on parole. *See Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 936 (N.D. Cal. 2025), *appeal filed*, No. 25-7472 (9th Cir. Nov. 26, 2025); *see also Cardin Alvarez*, 2025 WL 2898389, at *17 (finding that immigrant detained at the border and placed in § 240 proceedings rather than expediated removal was vested "with the procedural due process rights that Congress guaranteed noncitizens in § 240 proceedings and noncitizens paroled into the country"). And although "reviewing courts are generally not free to impose [additional procedural rights] if the agencies have not chosen to grant them," *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 582 (2022), "governmental actions may create a liberty interest entitled to the protections of the Due Process Clause." *Doe v. Becerra*, 787 F. Supp. 3d 1083 (E.D. Cal. 2025) (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987)). Accordingly, upon release, Petitioner gained a liberty interest in his release and certain analogous procedural rights.

**B.    *Mathews* factors favor pre-deprivation hearing.**

Because Petitioner has a liberty interest in his release, the Court must now determine what procedures are required. To do so, courts apply the three-part test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Mathews* explains "[t]he fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Under *Mathews*, courts balance (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would

entail." *Id.* at 335.  Respondents do not address the *Mathews* test.

As to the first factor, "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). This factor favors Petitioner.

As to the second factor, "[w]here an individual has not received a bond or redetermination hearing, 'the risk of an erroneous deprivation [of liberty] is high." *Salcedo Aceros*, 2025 WL 2637503, at *12 (second alteration in original) (quotation omitted). The Court concludes there is a grave risk of erroneous deprivation if previously released individuals can be re-detained without a neutral decisionmaker first evaluating whether re-detention is warranted.  This factor also favors Petitioner.

Finally, as to the third *Mathews* factor, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).  To be sure, detention hearings in immigration courts are commonplace and impose a "minimal cost." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025).  And Respondents' interest is even lower because Petitioner was previously released on his own recognizance after immigration officials necessarily determined he was not a flight risk or danger to the community and the government does not allege Petitioner violated any condition of his release.  *See Pinchi v. Noem*, No. 25cv05632-RMI, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025); *see also Singh v. Andrews*, 803 F. Supp.3d at 1048 ("On balance, the *Mathews* factors show that petitioner is entitled to process, and that process should have been provided before petitioner was detained."); *Telenchana*, 2026 WL 696806, at *9 (concluding that re-detention of petitioners who had been released on their own recognizance violated due process under the *Mathews* framework because

- 6 -

petitioners had "established liberty interests," "the absence of pre-deprivation procedures in their re-detentions created an unacceptably high risk of erroneous deprivations," and "the governmental interest in their re-detention without adequate process [was] minimal or non-existent").

The *Mathews* factors weigh in favor of finding Petitioner was entitled to a hearing before he was re-detained. The Court finds that immediate release, rather than requiring another bond hearing, is the appropriate remedy. *See Ruiz v. Noem*, No. 3:25-CV-03536-RBM-BJW, 2025 WL 3719888, at *2 (S.D. Cal. Dec. 23, 2025) ("[G]iven Respondents' 'weighty' interest in the 'efficient administration of the immigration laws,' *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), it does not make sense to require Respondents to set a new bond hearing before a potentially new immigration judge just to duplicate the same efforts taken at the [previous] hearing."); *Ramirez Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295, at *6 (W.D. Wash. Nov. 25, 2025) (directing immigration detainee's immediate release after he was re-detained following his parole's expiration); *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful] detention is, of course, release."); *Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention.").

For these reasons, the Court will grant the Petition and order Petitioner released from custody immediately.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

**III.    Order**

Accordingly,

**IT IS ORDERED granting in part and denying in part** the Petition for Writ of Habeas Corpus (Doc. 1). Petitioner's due process claim in Count Two is granted; the remainder of the Petition is denied as moot.

**IT IS FURTHER ORDERED** that Respondents must immediately release Petitioner from custody under the same conditions that existed before his re-detention.

**IT IS FURTHER ORDERED** that Respondents must provide a notice of compliance within two business days of Petitioner's release.

**IT IS FURTHER ORDERED** that any pending motions are denied as moot and the Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 24th day of March, 2026.

John C. Hinderaker
United States District Judge